IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| GARY WILLIAMS LORI, ) | Case No. 5:22-cv-1036 |
| ) | |
| Plaintiff, ) | |
| ) | MAGISTRATE JUDGE |
| v. ) | THOMAS M. PARKER |
| ) | |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | **MEMORANDUM OPINION AND** |
| ) | **ORDER** |
| Defendant. ) | |

    Plaintiff, Gary Williams Lori, seeks judicial review of the final decision of the Commissioner of Social Security, denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act. Lori challenges the Administrative Law Judge's ("ALJ") non-disability finding, claiming that the ALJ erred by not further developing the record with a consultative examination and not adequately explaining the basis for her RFC findings.

    Because the ALJ failed to apply proper legal standards by failing to adequately articulate on what basis she made her RFC findings or why further record development was unnecessary, the Commissioner's final decision denying Lori's application for DIB must be vacated and Lori's case must be remanded for further consideration.

I.  **Procedural History**

On June 8, 2020, Lori applied for DIB. (Tr. 194).[1] Lori alleged that he became disabled on April 1, 2016 due to: (i) herniated cervical discs; (ii) thoracic pain and numbness; (iii) lumbar pain; (iv) restricted movement; and (v) arthritis. (Tr. 194, 228). The Social Security Administration denied Lori's applications initially and upon reconsideration. (Tr. 56–59, 61–64). Lori requested an administrative hearing. (Tr. 81–82).

ALJ Mary Lohr heard Lori's case telephonically on March 4, 2021 and denied Lori's application in an April 12, 2021 decision. (Tr. 15–21, 26–54). In so ruling, the ALJ determined that Lori had the RFC to perform work at the medium exertional level, except that:

> [Lori] can lift 50 pounds occasionally and 25 pounds frequently; carry[] 50 pounds occasionally and 25 pounds frequently; sit[] for 6 hours, stand[] for 6 hours, [and] walk[] for 6 hours, and push/pull as much as [he] can lift/carry. He can frequently reach overhead to the left and frequently reach overhead to the right. [Lori] can never climb ladders, ropes, or scaffolds[ or crawl. He can] stoop frequently, kneel frequently, [and] crouch frequently[.]

(Tr. 18–19). On April 12, 2022, the Appeals Council declined further review, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1–3). On June 15, 2022, Lori filed a complaint to obtain judicial review. ECF Doc. 1.

II.  **Evidence**

    A.  **Personal, Educational, and Vocational Evidence**

Lori was born on June 25, 1958. (Tr. 194). He was 57 years old on the alleged onset date and 58 years old on the date last insured (March 31, 2017). (Tr. 17). Lori completed two years of college and had no specialized or vocational training. (Tr. 229). Lori had past work as a boiler room helper, driver at a sales route, grinder setup operator, landscaper, and taxi driver,

---

[1] The administrative transcript appears in ECF Doc. 6.

2

which, with the exception of grinder setup operator, the ALJ determined Lori could perform. (Tr. 20–21, 32–39, 47–49, 229).

      **B.**      **Relevant Medical Evidence**

Lori's medical history around the time of the alleged onset date included: (i) an anterior cervical discectomy and fusion in 2005 (Tr. 295); (ii) a lumbar discectomy in 2000 (Tr. 295); and (iii) emergency room treatment for kidney stone pain and chronic obstructive pulmonary disease ("COPD") in 2014 and January 2016 (Tr. 284–87, 389–99, 403–11). Lori did not seek or receive medical treatment during the period under adjudication. *See* (Tr. 40–41, 43–44, 377).

On November 20, 2017, Lori visited Gerardo Cisneros, MD, to establish care. (Tr. 334). Lori reported back pain, ear discomfort, muscle aches and cramps, neck pain, and stiffness. (Tr. 334, 337). His physical examination results were remarkable for impacted ear canals, tender lumbar paraspinal muscles, and decreased range of motion. (Tr. 338). Dr. Cisneros diagnosed Lori with cerumen impaction and chronic back/neck pain and ordered x-ray testing. (Tr. 339).

On December 5, 2017, Lori underwent x-ray testing. (Tr. 384, 386). Lori's lumbar x-ray test results showed diffuse lumbar spondylosis which was most severe at L5-S1: "[M]oderate to severe disc space narrowing at L5-S1 with endplate sclerosis, spurring and vacuum disc phenomenon. There is mild disc space narrowing throughout the remainder [of] the lumbar spine with minimal endplate spurring. … There are bilateral facet degenerative changes at L5-S1." (Tr. 384). Lori's cervical x-ray test results showed: (i) moderate to severe multilevel degenerative disc disease and degenerative facet arthropathy throughout the cervical spine; (ii) grade 1 degenerative listhesis at C3-C4 and C4-C5; (iii) congenital fusion of the C6 and C7 vertebral bodies; and (iv) severe multilevel bilateral foraminal stenosis secondary to a

3

combination of hypertrophic degenerative facet arthropathy and uncovertebral spurring. (Tr. 386).

On December 11, 2017, Lori returned to Dr. Cisneros to review his x-ray results, reporting back pain and neck pain with radiation to his extremities. (Tr. 328, 330). Lori's physical examination results were remarkable for tender paraspinal muscles and decreased range of motion. (Tr. 331). Dr. Cisneros diagnosed Lori with cervical spine stenosis and referred Lori to a specialist. (Tr. 332).

On January 3, 2018, Lori visited neurosurgeon Georges Markarian, MD. (Tr. 295). Lori reported cervical neck pain with radiation to his upper extremities with numbness and weakness and back pain with radiation to his groin and anterior thigh. *Id.* Lori reported that his pain started in January 2016 but had worsened within the previous six months. *Id.* Lori's physical examination results were remarkable for: (i) 4+/5 strength with elbow flexion and hand abduction; (ii) hyper-reflexive upper extremities with numbness in both arms; and (iii) 45° cervical spine extension, flexion, and rotation. (Tr. 297–98). Dr. Markarian diagnosed Lori with cervical and lumbar radiculopathy and cervical myelopathy. (Tr. 298). Dr. Markarian ordered CT and MRI testing. *Id.*

On January 18, 2018, Lori visited Dr. Cisneros for a follow-up, indicating that he did not "want to proceed" with Dr. Markarian's recommended evaluations. (Tr. 323). He also reported back and neck pain. (Tr. 325). Dr. Cisneros recommended that Lori continue with Dr. Markarian's recommendations. (Tr. 326).

On April 4, 2018, Lori returned to Dr. Markarian, reporting neck pain with radiation into his upper extremities, numbness, tingling, and weakness. (Tr. 291). Lori reported loss of balance, dropping items from his hands, and fine motor difficulty. *Id.* And Lori reported

midback pain. (Tr. 293). Lori's physical examination results were remarkable for: (i) 15° cervical extension and rotation; (ii) 30° cervical flexion; and (iii) 3/4 reflex. (Tr. 292–93). According to Dr. Markarian, Lori's MRI test results showed: "a previous C6-7 fusion anteriorly and his disc C5-6 looks reasonable. He has a C7-T1 disc bulge as well as C3-4 and C4-5 disc bulge. … These areas of spondylosis at C3-4 and C4-5 result in moderate foraminal stenosis."[2] (Tr. 293). Dr. Markarian recommended that Lori undergo physical therapy. *Id.*

On May 14, 2018, Lori visited Dr. Cisneros, requesting a referral for pain management and rehabilitation therapy. (Tr. 318). Lori also reported arthritis, back, and neck pain. (Tr. 320). His physical examination results were remarkable for tender lumbar paraspinal muscles and decreased range of motion. (Tr. 321). Dr. Cisneros issued a referral to a "Specialist." (Tr. 321–22).

On December 9, 2019, Lori visited Nicole D'Amico, PA-C, for an orthopedic evaluation of his back pain. (Tr. 377). Lori reported that he started having back pain in April 2016 but could not afford to see a doctor. *Id.* Lori reported pain in the center of his low back, hips, and calves rated at 6/10 in severity. *Id.* Lori reported weakness, numbness, tingling, and imbalance. (Tr. 378). And he reported that he dropped items and had difficulty with buttons, zippers, jars, and handwriting. (Tr. 377). Lori's physical examination results were unremarkable. (Tr. 378–79). X-ray testing results showed "some intervertebral disc space narrowing, the worst of which is L4-5 and L5-S1" and "minimal degenerative changes of the hips." (Tr. 375). PA D'Amico diagnosed Lori with intervertebral disc disorders with radiculopathy of the lumbar region. (Tr. 379). PA D'Amico referred Lori to physical therapy. (Tr. 380).

---

[2] The actual MRI test results are not part of the administrative transcript.

On January 17, 2020, Lori visited Stacey Surnear, PT, for a physical therapy evaluation. (Tr. 370). Lori reported his pain as ranging between 4/10 and 7/10 in severity and indicated that he could not bend without pain or walk without restriction. *Id.* Lori's physical examination results were remarkable for decreased range of motion, decreased flexibility, and decreased core/hip strength. (Tr. 372–73).

On March 5, 2020, Lori was discharged from physical therapy, having attended nine sessions, for failure to appear or reschedule. (Tr. 348).

C.  **Relevant Opinion Evidence**

On May 19, 2020, Rebecca R. Neiger, MD, reviewed Lori's file but determined that there was insufficient evidence to assess Lori's condition through the date last insured to form an opinion on Lori's functional capabilities and limitations. (Tr. 57–58). On July 27, 2020, James Cacchillo, MD, likewise found that there was insufficient evidence to assess Lori's condition. (Tr. 62). Lori's file on initial review and reconsideration did not include his December 2017 x-ray test results. *See* (Tr. 57, 62).

D.  **Relevant Testimonial Evidence**

Lori's representative argued at the onset of the administrative hearing that the evidence from after the date last insured related back to the period under adjudication and established disability. (Tr. 30). Lori alternatively requested that the ALJ order a consultative examination for an opinion going back to the alleged onset date. (Tr. 30–31). The ALJ did not address Lori's requests. *See* (Tr. 30–53).

Lori testified that he was unable to work due to his back and neck pain. (Tr. 39–40). Lori testified that he'd had issues with his back off and on since 1990, which started getting worse in April 2016. (Tr. 44). Lori testified that after a day of landscaping in April 2016, he

6

noticed he was unable to rotate his neck to the right. (Tr. 39). Since then, his symptoms gradually worsened. *Id.* Lori testified that his primary problem was an inability to bend. (Tr. 42, 44). He testified that he also had issues with his hands and loss of balance. (Tr. 44–45).

Lori testified that he did not seek treatment for his pain because of family obligations and financial constraints. (Tr. 40–41, 43). Lori testified that during the period under adjudication he took care of the children while his wife worked and spent time with his ailing mother, who had cancer. (Tr. 40–41). Lori testified that his wife refused to pay for his medical care, which he was only able to afford after inheriting some money from his mother's estate. (Tr. 43–44).

Lori testified that he then started seeing Dr. Cisneros in November 2017 and obtained a referral to Dr. Markarian. (Tr. 41). Lori testified that he declined Dr. Markarian's recommendation to pursue neck surgery because he did not want to, and his "neck gives [him] minor problems compared to [his] lumbar [spine.]" (Tr. 41–42). Lori testified that he ran out of funds and did not pursue treatment for his lumbar spine pain except physical therapy in 2020. (Tr. 42–44). He was treating his pain with an NSAID. (Tr. 43).

Vocational expert ("VE") Daniel Simone testified that an individual with the ALJ's hypothetical limitations could perform Lori's past work as: (i) a landscape laborer, as actually performed; (ii) a driver on sales route, as actually and typically performed; and (iii) a boiler room helper, as actually and typically performed. (Tr. 46–50). The VE further testified that the individual could perform work as a hand packager, a counter supply worker, and a hospital cleaner. (Tr. 50-51). If the individual were further limited to work at the light exertion level, the VE testified that the individual could perform Lori's past work as a landscape laborer, as actually performed, and a boiler room helper, as typically performed. (Tr. 51).

The VE testified that the individual could not perform Lori's past work if restricted to standing and walking four hours. (Tr. 52). And the VE testified that the maximum tolerance for off-task behavior was 15%. (Tr. 52–53).

### III. Law & Analysis

#### A. Standard of Review

The court's review of the Commissioner's final decision denying disability benefits is limited to deciding "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). Substantial evidence exists "if a reasonable mind might accept the relevant evidence as adequate to support a conclusion," *Id.* at 406 (internal quotation marks omitted), even if a preponderance of the evidence might support the opposite conclusion. *O'Brien v. Comm'r of Soc. Sec.*, 819 F. App'x 409, 416 (6th Cir. 2020). However, the ALJ's decision will not be upheld when the ALJ failed to apply proper legal standards and the legal error prejudiced the claimant. *Rabbers v. Comm'r SSA*, 582 F.3d 647, 654 (6th Cir. 2009). Nor will the court uphold a decision when the Commissioner's reasoning does "not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp.2d 875, 877 (N.D. Ohio 2011) (internal quotation marks omitted).

#### B. Step Four – RFC

Lori argues that a remand is warranted under *Deskin* because the ALJ made an RFC determination without the benefit of any opinion evidence and the evidence was not of a kind that the ALJ, as a lay person, could interpret to make RFC findings. ECF Doc. 8 at 9–12 (citing *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp.2d 908 (N.D. Ohio 2008)).

8

The Commissioner responds that *Deskin* and its progeny are not binding, are unsupported by law, and are inconsistent with this Circuit's precedent. ECF Doc. 9 at 10–14. The Commissioner alternatively argues that any *Deskin* error was harmless because there is no reasonable probability than a consultative examination would render an opinion different than those reached by the state agency consultants. ECF Doc. 9 at 14–16.

Lori's reply brief argues that the Sixth Circuit has not expressed itself on *Deskin* and that district courts continue to apply *Deskin* when it is implicated. ECF Doc. 12 at 2. Lori argues that remand for a third opinion would not be pointless because the state agency consultants lacked the benefit of his 2017 x-ray test results, which the ALJ interpreted to assign limitations the state agency consultants did not. ECF Doc. 12 at 3. Lori argues that it would be reasonable for a third opinion to opine that Lori's spinal impairments and COPD would limit him to work at the light exertion level and no exposure to extreme heat, which would preclude all of Lori's past work and result in an automatic finding of disability. ECF Doc. 12 at 3–4.

The regulations impose two competing obligations in the submission and development of disability claims: (i) the *claimant* must prove his claim by providing a record complete and detailed enough for the Commissioner to make a disability determination; and (ii) the *ALJ* has an obligation to make reasonable efforts to develop a sufficient record upon which to make a disability determination. 20 C.F.R. § 404.1512(a)-(b); 20 C.F.R. § 404.1545(a)(3). When the record is insufficient, the ALJ has discretion to determine how to resolve the evidentiary gap by, among other things, requesting a consultative examination. 20 C.F.R. § 404.1519a(b); 20 C.F.R. § 404.1520b(b)(2)(iii). When the gap cannot be resolved, the regulations command that a determination be made with the available record. 20 C.F.R. § 404.1520b(b)(3).

9

The regulations do not require that an ALJ exercise her discretion in any particular manner, or at all, to resolve an evidentiary gap in the record. *Landsaw v. Sec'y of Health & Hum. Servs.*, 803 F.2d 211, 214 (6th Cir. 1986). However, a line of cases stemming from *Deskin* have interpreted the regulations to require a consultative opinion when "an ALJ makes a finding of work-related limitations based on no medical source opinion or an outdated source opinion that does not include consideration of a critical body of objective medical evidence." *Kizys v. Comm'r of Soc. Sec.*, No. 3:10 CV 25, 2011 U.S. Dist. LEXIS 122296, at *4 (N.D. Ohio Oct. 21, 2011); *see also Falkosky v. Comm'r of Soc. Sec.*, 1:19-cv-2632, 2020 U.S. Dist. LEXIS 165462, at *14–15 (N.D. Ohio Sept. 10, 2020).

*Deskin* has been criticized by other courts within this district as "not representative of the law established by the legislature[] and interpreted by the Sixth Circuit Court of Appeals." *E.g.*, *Henderson v. Comm'r of Soc. Sec.*, No. 1:08 CV 2080, 2010 U.S. Dist. LEXIS 18644, at *6 (N.D. Ohio Mar. 1, 2010). Nevertheless, in the absence of Circuit precedent on the matter, courts within this district, including this one, have applied *Deskin* when it is implicated by the facts and either distinguish from *Deskin*, or, if they can't, remand for further record development. *Reidenbach v. Comm'r of Soc. Sec.*, No. 5:21-cv-1880, 2022 U.S. Dist. LEXIS 137393, at *21 (N.D. Ohio Aug. 2, 2022) (collecting cases).

The court recognizes the Commissioner's invitation to depart from the *Deskin* line of cases. However, we need not revisit our earlier decisions or weigh in on the debate over the precedential value of *Deskin*. As will be discussed below, the ALJ failed to apply proper legal standards in her determination of Lori's RFC for a more fundamental reason – the ALJ failed to adequately explain the basis for her findings. 42 U.S.C. § 405; *Rogers*, 486 F.3d at 241; *see* ECF Doc. 8 at 9 (arguing that the ALJ failed to build a logical bridge between the evidence and the

10

RFC); *see also McCaig v. Comm'r of Soc. Sec.*, No. 16-11419, 2017 U.S. Dist. LEXIS 154307, at *26 (E.D. Mich. Aug. 25, 2017) (stating that, regardless of *Deskin*, the ALJ "remains obligated to make a logical bridge between the evidence relied on and the conclusion reached"), *report and recommendation adopted* 2017 U.S. Dist. LEXIS 153979 (E.D. Mich. Sept. 21, 2017).

The task before the ALJ was to determine whether Lori met the criteria for disability on or before the date last insured (March 31, 2017). *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988); (Tr. 17). However, as the Commissioner stresses, there was no evidence that Lori received any medical treatment for his back impairment during the period under adjudication. *See* (Tr. 40–41, 43–44, 377). The medical evidence that did exist post-dated Lori's last insured date, but the ALJ relied upon that after-occurring evidence to make a determination on Lori's functional capacity *during* the period under adjudication. (Tr. 18–20). For the ALJ to have done so, the ALJ must have first determined that the evidence from after the date last insured was relevant to Lori's health during the period under adjudication. *See Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 850 (6th Cir. 2020) (noting that evidence of the claimant's condition after the date last insured is relevant to the extent it reflects his condition before the date last insured).

However, the ALJ did not even begin to articulate in what way the medical evidence that was created after the last insured date was reflective of Lori's condition during the period under adjudication or supported her RFC findings. The ALJ was required to provide "a narrative discussion describing how the evidence supports each [RFC] conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 SSR LEXIS 5, at *19. The ALJ summarized the record (i.e., Lori's subjective symptom complaints, generally unremarkable physical examination results, and his December 2017 x-ray test results), but she did not discuss at all how she analyzed that evidence to arrive at

11

her RFC findings. *See* (Tr. 20). Instead, the ALJ simply stated that she found the two state agency reviewers' conclusions – that there was insufficient evidence from Lori's alleged onset date to the date last insured to assess his RFC – "somewhat persuasive." The ALJ's entire analysis of Lori's claim was set forth in the following two sentences:

> However, the claimant did have medical evidence during the relevant period, which showed pain and discomfort related to degenerative disc disease of the lumbar and cervical spines. Based on the foregoing, the undersigned finds the claimant has the above residual functional capacity assessment, which is supported by the totality of the claimant's medical evidence of record."

(Tr. 20). The ALJ did not cite what medical evidence "during the relevant period" she was referring to. And she did not give any specific cites to medical evidence from within "the totality of the record" that supported her RFC finding.

The ALJ's lack of explicit reasons to support her RFC determination can be overlooked when those reasons can be readily discerned from a common sense reading of the decision as a whole. *See Buckhannon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 678 (7th Cir. 2010). The ALJ's decision could be read as finding that Lori's subjective symptom complaints of upper extremity pain and weakness and difficulty with fine manipulation were inconsistent with unremarkable objective exam findings in the record and only partly consistent with the December 2017 x-ray evidence. *See* (Tr. 19–20). But without medical expertise, it is unclear on what basis the ALJ determined that "diffuse lumbar spondylosis, which was most severe at L5-S1," "moderate to severe multi-level degenerative disc disease and degenerative facet arthropathy throughout the cervical spine," and "severe multi-level bilateral foraminal stenosis secondary to a combination of hypertrophic degenerative facet arthropathy and uncovertebral spurring," equated to an ability to lift 50 pounds occasionally and 25 frequently, sit/stand/walk for 6 hours, and frequently stoop, kneel, and crouch. (Tr. 18–19); *see Simpson v. Comm'r of Soc.*

12

*Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings" (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)). It was certainly with the ALJ's discretion whether to supplement the record with opinion evidence on the aforementioned issues. *See* 20 C.F.R. § 404.1519a(a); 20 C.F.R. § 404.1520b(b). That is a determination we ordinarily can review. *See Hayes v. Comm'r of Soc. Sec.*, 357 F. App'x 672, 675 (6th Cir. 2009). But the court's ability to make that review in this case was compromised by the ALJ's failure to address – in any way – Lori's request for a consultative examination.

The logical gaps in the ALJ's reasoning were not harmless. The lack of a logical bridge between the medical evidence and the ALJ's decision prevents the claimant from understanding the basis for the ALJ's negative findings, thus precluding the claimant from being able to challenge the ALJ's reasoning, and it prevents this court from being able to meaningfully review the ALJ's decision. *Cox v. Comm'r of Soc. Sec.*, 615 F. App'x 254, 257 (6th Cir. 2015); *see also Gross v. Comm'r of Soc. Sec.*, 247 F. Supp.3d 824, 830 (E.D. Mich. 2017).

The above analysis obviates the need to address the parties' *Deskin* arguments, though the court notes that, despite the Commissioner's criticism of *Deskin*, *Deskin* was never appealed. In the almost 15 years since *Deskin* was decided, courts have applied and remanded based on *Deskin* or its progeny dozens of times.[3] Rather than continue to fight *Deskin*'s application on a

---

[3] *E.g.*, *Bond v. Comm'r of Soc. Sec.*, No. 3:18-cv-369, 2020 U.S. Dist. LEXIS 14602, at *5–8 (S.D. Ohio Jan. 29, 2020), *report and recommendation adopted* 2020 U.S. Dist. LEXIS 43083 (S.D. Ohio Mar. 11, 2020); *Rutledge v. Comm'r of Soc. Sec.*, No. 3:18-cv-268, 2019 U.S. Dist. LEXIS 140598, at *8–12 (S.D. Ohio Aug. 20, 2019), *report and recommendation adopted* 2019 U.S. Dist. LEXIS 151447 (S.D. Ohio Sept. 5, 2019); *Snell v. Comm'r of Soc. Sec.*, No. 3:18-cv-173, 2019 U.S. Dist. LEXIS 125511, at*7–9 (S.D. Ohio July 29, 2019); *Johnson v. Saul*, No. 1:18-0041, 2019 U.S. Dist. LEXIS 131570, at*11–21 (M.D. Dist. Tenn. July 19, 2019), *report and recommendation adopted* 2019 U.S. Dist. LEXIS 131568 (M.D. Tenn. Aug. 6, 2019); *Branscum v. Berryhill*, No. 6:17-CV-345, 2019 U.S. Dist. LEXIS 19130, at *24–37 (E.D. Ky. Feb. 6, 2019); *Bryant v. Comm'r of Soc. Sec.*, No. 3:15-cv-354, 2017 U.S. Dist. LEXIS 17126, at*9–10 (S.D. Ohio Feb. 7, 2017), *report and recommendation adopted sub nom. Bryant v.*

case-by-case basis, the Commissioner efforts might be better served by raising the issue to the Sixth Circuit on appeal.

For present purposes, a remand is warranted for a new decision that would be supported by adequately articulated reasons for the ALJ's conclusions. Although not required, the ALJ's

---

*Berryhill*, 2017 U.S. Dist. LEXIS 24961 (S.D. Ohio Feb. 22, 2017); *Allor v. Colvin*, No. 15-14377, 2016 U.S. Dist. LEXIS 181437, at *15–16 (E.D. Mich. Nov. 28, 2016), *report and recommendation adopted sub nom. Allor v. Comm'r of Soc. Sec.*, 2017 U.S. Dist. LEXIS 82728 (E.D. Mich. May 31, 2017); *Parker v. Colvin*, No. 15-12558, 2016 U.S. Dist. LEXIS 124079, at *40-42 (E.D. Mich. Aug. 2016), *report and recommendation adopted sub nom. Parker v. Comm'r of Soc. Sec.*, 2016 U.S. Dist. LEXIS 123586 (E.D. Mich. Sept. 13, 2016); *Harris v. Comm'r of Soc. Sec.*, No. 15-10966, 2016 U.S. Dist. LEXIS 64117, at *29–31 (E.D. Mich. Mar. 2, 2016), *report and recommendation adopted sub nom. Harris v. Colvin*, 2016 U.S. Dist. LEXIS 36988 (E.D. Mich. May 16, 2016); *Wheeler v. Comm'r of Soc. Sec.*, No. 2015 U.S. Dist. LEXIS 12486, at*26–29 (E.D. Mich. Aug. 14, 2015), *report and recommendation adopted* 2015 U.S. Dist. LEXIS 123958 (E.D. Mich. Sept. 17, 2015); *White v. Comm'r of Soc. Sec.*, No. 13-15172, 2015 U.S. Dist. LEXIS 36721, at *34–35 (E.D. Mich. Mar. 3, 2015), *report and recommendation adopted* 2015 U.S. Dist. LEXIS 36296 (E.D. Mich. Mar. 24, 2015); *Krakow v. Comm'r of Soc. Sec.*, No. 13-14388, 2015 U.S. Dist. LEXIS 36722, at *27–29 (E.D. Mich. Mar. 2, 2015), *report and recommendation adopted* 2015 U.S. Dist. LEXIS 35623 (E.D. Mich. Mar. 23, 2015); *Dragoiu v. Comm'r of Soc. Sec.*, No. 13-14786, 2015 U.S. Dist. LEXIS 34258, at *40–41 (E.D. Mich. 2015), *report and recommendation adopted* 2015 U.S. Dist. LEXIS 33295 (E.D. Mich. Mar. 11, 2015); *McAlister v. Colvin*, No. , 2014 U.S. Dist. LEXIS 104199, at *25–27 (E.D. Mich. July 9, 2014), *report and recommendation adopted* 2014 U.S. Dist. LEXIS 102983 (E.D. Mich. July 29, 2014); *Anthony v. Comm'r of Soc. Sec.*, No. 13-cv-13792, 2014 U.S. Dist. LEXIS 161642, at *21–22 (E.D. Mich. Oct. 17, 2014), *report and recommendation adopted* 2014 U.S. Dist. LEXIS 160742 (E.D. Mich. Nov. 17, 2014); *Sanders v. Comm'r of Soc. Sec.*, 1:13-cv-481, 2014 U.S. Dist. LEXIS 111182, at *33–35 (S.D. Ohio July 10, 2014), *report and recommendation adopted* 2014 U.S. Dist. LEXIS 110671 (S.D. Ohio Aug. 11, 2014); *Wenzel v. Comm'r of Soc. Sec.*, No. 13-CV-11897, 2014 U.S. Dist. LEXIS 111395, at *14–15 (E.D. Mich. Apr. 3, 2014), *report and recommendation adopted* 2014 U.S. Dist. LEXIS 110826 (E.D. Mich. Aug. 12, 2014); *Saunders v. Comm'r of Soc. Sec.*, No. 1:13-cv-118, 2014 U.S. Dist. LEXIS 17321, at *32–33 (S.D. Ohio Feb. 11, 2014), *report and recommendation adopted* 2014 U.S. Dist. LEXIS 27409 (S.D. Ohio Mar. 4, 2014); *Colaner v. Comm'r of Sec.*, No. 12-cv-00716, 2013 U.S. Dist. LEXIS 140934, at *6–10 (S.D. Ohio Sept. 30, 2013); *Lindsey v. Comm'r of Soc. Sec.*, No. 12-CV-12585, 2013 U.S. Dist. LEXIS 165779, at *19–20 (E.D. Mich. Sept. 26, 2013), *report and recommendation adopted* 2013 U.S. Dist. LEXIS 164913 (E.D. Mich. Nov. 20, 2013); *Karwat v. Comm'r of Soc. Sec.*, No. 11-12452, 2013 U.S. Dist. LEXIS 134161, at *31–32 (E.D. Mich. Aug. 16, 2013), *report and recommendation adopted* 2013 U.S. Dist. LEXIS 133828 (E.D. Mich. Sept. 19, 2013); *Capshaw v. Comm'r of Soc. Sec.*, No. 12-11366, 2013 U.S. Dist. LEXIS 124986, at *43–46 (E.D. Mich. Aug. 9, 2013), *report and recommendation adopted* 2013 U.S. Dist. LEXIS 124860 (E.D. Mich. Aug. 30, 2013); *Underwood v. Colvin*, No. 1:12-cv-589, 2013 U.S. Dist. LEXIS 96298, at *23–24 (S.D. Ohio July 10, 2013), *report and recommendation adopted* 2013 U.S. Dist. LEXIS 107267 (S.D. Ohio July 31, 2013); *Ray v. Comm'r of Soc. Sec.*, 940 F. Supp.2d 718, 728–29 (S.D. Ohio 2013); *Mitsoff v. Comm'r of Soc. Sec.*, 940 F. Supp.2d 693, 703–04 (S.D. Ohio 2013); *Smiley v. Comm'r of Soc. Sec.*, 940 F. Supp.2d 592, 601 (S.D. Ohio 2013); *Isaacs v. Comm'r of Soc. Sec.*, No. 1:08-cv-828, 2009 U.S. Dist. LEXIS 102429, at *16–19 (S.D. Ohio Sept. 22, 2009), *report and recommendation adopted* 2009 U.S. Dist. LEXIS 102421 (S.D. Ohio Nov. 3, 2009).

evaluation on remand may well be facilitated by a consultative examination on Lori's functional limitations during the period under adjudication in light of the evidence the state agency consultants did not have at their disposal. If the ALJ elects not to obtain a consultative opinion, the ALJ should explain the basis for determining that a third opinion was not warranted, so that we may review it.

### IV. Conclusion

Because the ALJ failed to apply proper legal standards by failing to adequately articulate on what basis reached her RFC findings or why further record development was unnecessary, the Commissioner's final decision denying Lori's application for DIB is vacated and that Lori's case is remanded for further consideration.

**IT IS SO ORDERED.**

Dated: March 16, 2023

Thomas M. Parker
United States Magistrate Judge